## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEVEN ALBERT and BARRY DIAMOND, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>PETER FRANCHOT, in his official capacity as the Comptroller of the State of Maryland, )<br><br>Defendant. ) | CIVIL ACTION<br><br>No. _____ |

## CLASS ACTION COMPLAINT

Plaintiffs Steven Albert and Barry Diamond ("Plaintiffs"), individually and on behalf of a Class of persons, as defined below, for this Class Action Complaint (the "Complaint") against Defendant Peter Franchot, Comptroller of the State of Maryland (the "Comptroller" or "Defendant"), in his official capacity, state as follows:

## INTRODUCTION

1.     Plaintiffs bring this action challenging the constitutionality under the Fifth and Fourteenth Amendments to the United States Constitution of the provision of the statute of the State of Maryland ("Maryland" or the "State") concerning abandoned and unclaimed property, Md. Code, Com. Law §§ 17-101 *et seq.* (the "Act"), which requires the State to take for public use, without just compensation, private property that the State classifies as "presumed abandoned" pursuant to the provisions of the Act.  This action also challenges the Act under the Takings Clause of Article III, Section 40 of the Maryland Constitution. Count I of the Complaint seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and under the United States Constitution on behalf of all current owners of unclaimed property

held by the Comptroller in the form of money.  Count II seeks identical relief under Section 1983 and the Maryland Constitution.

2.    The Act applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Under the Act such property is "presumed abandoned" if the owner, as defined in the Act, has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property within certain time limits provided in the Act. Property that is "presumed abandoned" must be delivered to Defendant's custody.

3.    The Takings Clause of the Fifth Amendment to the United States Constitution (the "Fifth Amendment") prohibits the government from using private property for public purposes without compensation to the property owner: "nor shall private property be taken for public use, without just compensation."

4.    The Takings Clause of Article III, Section 40 of the Maryland Constitution ("Article III, Section 40") contains a similar proscription: "The General Assembly shall enact no Law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation."

5.    Nevertheless, under the Act "presumed abandoned" property, proceeds from any sale of any such property that was not in cash form when it was taken into state custody, and earnings on any such property and all cash delivered as presumed abandoned to the Defendant, are all used to fund state programs or operations until claimed by an "owner" of the property.  An owner may reclaim property from the State; however, the Act provides that an owner who files a valid claim is entitled only to the property turned over to the State

2

by the holder (or the proceeds from the sale of that property) and not to any interest or dividends or other increments that accrue on the property after delivery to the State or to the payment of just compensation to an owner of presumed abandoned property held in the form of cash.

6.      The Act does not provide for compensation to any owner for the State's taking of these fruits of the property and the use of that property to fund State obligations during the period it is in the State's custody.

7.      Accordingly, the Act effectively provides the State with an interest-free loan of unclaimed private property funds that the Act directs to be co-mingled with the State's General Fund and certain of the State's special-purpose funds while in the Comptroller's custody, without providing any just compensation to claiming property owners for the State's use of those private property funds while in the Comptroller's custody.

8.      The State currently holds more than $1.9 billion in unclaimed property funds, and it uses that unclaimed property freely to fund State obligations.  The State otherwise pays market rates to borrow money.

9.      The Court of Appeals for the Seventh Circuit in *Kolton v. Frerichs,* 869 F.3d 532 (7th Cir. 2017), held that Illinois' unclaimed property act -- which, like Maryland's, provided the state with use of unclaimed property without payment of just compensation to claiming property owners -- violated the Fifth Amendment's Takings Clause, as made applicable to Illinois and the other states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Fourteenth Amendment").  The Seventh Circuit concluded the Illinois act denied property owners just compensation for the benefit of the property's use while in state custody.  The Seventh Circuit has also held that the state's

obligation to pay just compensation for the public use of unclaimed private property does not depend on whether the property earned interest before it was delivered to the Comptroller.

10.     In this Complaint, Plaintiffs seek a declaration that the Maryland Act, in providing for the State's confiscation of the interest and other earnings on unclaimed property and its beneficial use of the property while in State custody to fund State obligations without any compensation, effects a taking for which Plaintiffs and the Class are entitled to just compensation under the Fifth Amendment and Article III, Section 40. Plaintiffs also seek an injunction to implement that declaration and the payment of just compensation to those whose property has been returned since the date of this Complaint's filing.

11.     The Seventh Circuit's *Kolton* decision has compelling reasoning and results that are entirely consistent with the existing law of the Third Circuit.  This Court should follow Seventh Circuit's reasoning and conclusions and apply the Court of Appeals' rationale to the Maryland Act.  Thus, this Court should conclude that, like Illinois' counterpart, the Maryland Act's provisions permitting the public use of unclaimed private property without payment to the owners of the private property constitutes an unlawful taking without just compensation under the Fifth Amendment.  The Court should reach the same conclusion under Article III, Section 40.

## **PARTIES**

12.      Plaintiffs are and have been at all relevant times citizens and residents of Maryland.  Plaintiffs are each an "owner" of property, as defined in Section 17-101 of the Act, that is currently held in custody pursuant to the Act by Defendant.

4

13.     Defendant Peter Franchot is the Comptroller of the State of Maryland. In that position, pursuant to the Act, Defendant, or any predecessor or successor in that position, is and has been in charge of supervising and administering the Act.  Plaintiffs sue Defendant Franchot in his official capacity. In that capacity, he resides in this District and is subject to suit in this District.

## JURISDICTION AND VENUE

14.     The claims in this Complaint arise under the Fifth and Fourteenth Amendments to the United States Constitution, Article III, Section 40 of the Maryland Constitution, and under 42 U.S.C. § 1983. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1367(a). In addition, Count I of this Complaint involves a claim for a Declaratory Judgment under 28 U.S.C. § 2201, *et seq*.

15.     Venue is proper in this District because Defendant is deemed to reside in and is subject to suit in this District, and because a substantial portion of the events that underlie the claims asserted here occurred in this District.

## STATEMENT OF FACTS

### The Act and Its Operation

16.     The Act contains many provisions modeled after a Uniform Unclaimed Property Act promulgated by the Uniform Law Commission.  The Maryland Act, as alleged above, provides that private property is "presumed abandoned" if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time.  *See* Md. Code, Com. Law §§ 17-301 – 17-308.  The purpose of the Act is twofold: first, to

reunite owners with their property, and second, to allow the State rather than the holder to use the property before it is reunited with its owner.  The Act contains special provisions for unclaimed property held by the federal government or museums.

17.     Once a holder determines property in its possession is "presumed abandoned" within the meaning of the Act, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the office of the Comptroller. *Id.*, §§ 17-310, 17-312. Upon delivery to the Comptroller, "the State shall assume custody and shall be responsible for its safekeeping." *Id.*, § 17-313.  If the property is not cash, securities or negotiable instruments, Defendant is required to offer to sell the property within one year to the highest bidder at a public sale "in whatever place in the State affords the most favorable market for the property involved." *Id.*, § 17-316.  The unclaimed property and proceeds from the sale of unclaimed property are to be held in custody for the owner, who can reclaim the property from the State at any time, but without payment of any compensation for the state's use of that property for the property's time in the Comptroller's custody. *Id.*, § 17-319.

18.     Indeed, when the State last amended Section 17-319, in 2004, the amendment deleted language requiring the Comptroller to pay claims for unclaimed property "plus interest at a rate equal to that earned by the State Treasurer each year on invested state funds."  2004 Md. Laws Ch. 110 (2004).  The 2004 amendment to the Act also deleted language requiring claims of unclaimed property in the form of interest-bearing securities upon delivery to the State to be paid out with interest accrued on the security while in State custody. *Id.* (repealing Section 17-314).  The 2004 amendment recites in preamble that it was enacted for "the purpose of repealing certain provisions that require the administrator of

6

abandoned property to pay interest to certain claimants; and generally relating to the payment of interest on abandoned property." *Id.*

19.     The Act directs the Comptroller to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State treasury for State use. The Act allocates certain dollar amounts, sometimes limited to certain fiscal years, for various State projects, including the Maryland Legal Services Corporation ($8,000,000), the State Victims of Crime Fund (all unclaimed criminal restitution awards), tax clinics for low-income residents ($250,000 for 2022-2023 only), and the Access to Counsel in Evictions Special Fund ($14,000,000 for 2024 only), with all remaining amounts received by the Comptroller flowing to the State's General Fund.  Md. Code, Com. Law § 17-317.   Before those allocations, the Comptroller is required (a) to deposit in a "special fund" a sum "not exceeding $50,000" from which the Comptroller shall pay owner claims and (b) deduct "all costs incurred in administering this title from the remaining net funds."  *Id.*

20.     The Comptroller acknowledges that the State is seeking the owners of more than $1.9 billion of unclaimed property, and that he receives into State custody tens, if not hundreds, of millions of dollars in unclaimed property every year.

21.     In recent years, the General Fund has been allocated the significant majority of unclaimed property received under the Act.   By law, the State's General Fund and its special-purpose funds are invested by the State treasury, with investment proceeds allocated to the specific funds or to the General Fund. *See, e.g.*, Md. Code, Hum. Svcs. § 11-402(d)(1) (Maryland Legal Services Corporation Fund retains all returns on investments of fund assets); Md. Code, Tax Gen. § 1-207(i)(2) (Investment earnings on the Tax Clinics for Low-Income Marylanders Fund "shall be credited to the General Fund of the State").  Thus,

7

no return on the State's investment of unclaimed property held in State custody is allocated toward the owners of the unclaimed property. Indeed, the statutory provision establishing the "special fund" annually allocated $50,000 of unclaimed property proceeds, for payment of unclaimed property owner claims, does not appear to permit investment of such funds for the benefit of owner claimants. Md. Code, Com. Law § 17-317.

22.     Under the Act, accordingly, unclaimed property transferred to the custody of Defendant and the State pursuant to the Act is invested alongside the State's General Fund and certain of the state's other special-purpose funds, and thus earns interest, dividends or other accruals and/or is held in interest-bearing accounts or other investment instruments. By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the State's General Fund and special-purpose funds, including those identified in the Act, and not to any fund dedicated to the payment of unclaimed property claims.

23.     Unlike an escheat statute, in which actual title to abandoned property may eventually vest in the State after certain due process procedures are followed, the Act is purely custodial in nature, and title to abandoned property is never transferred from the owner to the State of Maryland. Thus, title and ownership at all times remain with the original owner of the property.

24.     The Comptroller neither compensates an owner of unclaimed property for lost interest, dividends, or other earnings or accruals on the property after deposit with the Defendant but prior to sale, or the loss of the beneficial use of property, while it is in State custody, nor pays just compensation to any owner for the state's use of the private unclaimed property while in state custody.

25.     Moreover, the Act does not allow owners of unclaimed property to receive interest, dividends or other income or increments on any property that is liquidated or is a cash account while it is being used by the State as custodian, regardless of the nature of the property. *See* 2004 Md. Laws Ch. 110 (2004)(repealing statutory language from the Act that had required payment of interest on unpaid property claims "at a rate equal to that earned by the State Treasurer each year on invested state funds").

26.     In *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir.2017), the U.S. Court of Appeals for the Seventh Circuit considered a Fifth Amendment challenge to Illinois' unclaimed property statute, which, like Maryland's, paid no compensation to property owners for the state's use of unclaimed property while in the state's custody.  The Court reasoned:

> The Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money itself. *Brown v. Legal Foundation of Washington*, 538 U.S. 216,235, 123 S. Ct. 1406, 155 L. Ed. 2d 376 (2003); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165-72, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-65, 101 S. Ct. 446, 66 L.Ed. 2d 358 (1980). In *Cerajeski v. Zoeller*, 735 F.3d 577 (7th Cir. 2013), we applied these precedents to an Indiana statute like the Illinois statute in this case. We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be.

*Id.* at 578-80.

27.     The essential features of the Illinois unclaimed property act are identical to Maryland's.  The Illinois act allowed for no payment to property owners for the state's use of the owner's property while in the state's custody.  Here, too, the Maryland Act does not allow for the payment of compensation to property owners for the State's use of unclaimed property for public purposes while the property is in the State's custody pursuant to the Act.  Rather, Maryland law requires that earnings on unclaimed property while in state custody

inure to the sole benefit of the State's General Fund or certain of the State's special-purpose funds, as applicable.

**Plaintiff's Property**

28.     According to the Defendant's online records, Defendant holds Plaintiffs' property in custody. Plaintiffs are each the owner under the Act with respect to their respective items of property. Defendant has at all times since delivery held Plaintiffs' property in custody subject to its being claimed by or on behalf of each of the Plaintiffs.

29.     While the Defendant held Plaintiffs' property in custody, pursuant to the Act, the State has converted any of Plaintiffs' non-cash unclaimed property into cash and has used Plaintiffs' property for public purposes, including by investing Plaintiffs' property and earning interest or other accruals, and otherwise using it to fund the State's operations and programs.

30.     Under the Act, should each of the Plaintiffs claim his property, Defendant will pay each Plaintiff a cash payment equal to the total sum of the amounts stated in State records as the cash amount of the unclaimed property, but will not pay any just compensation to either Plaintiff for the State's use of that property during the period of custody.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, seeking declaratory and prospective injunctive relief on behalf of the following class (the "Class"):

> All persons or entities (including their heirs, assignees, legal representatives, guardians, administrators, and successors in interest) who are owners of unclaimed property being held in custody by the Comptroller of the State of

10

Maryland in the form of money under Maryland's disposition of unclaimed property statute, Md. Code, Com. Law §§17.101 – 17-408.

32.    The members of the Class are so numerous that joinder of all members is impracticable. There are currently hundreds of thousands of persons or entities who own property presumed abandoned and held in custody by Defendant under the Act. Currently the Comptroller is holding more than $1.9 billion in unclaimed property in custody, with tens, if not hundreds, of millions of dollars of additional unclaimed property flowing to the State annually. The average amount of each claim is too small to warrant an individual action challenging the Act's legality under the United States Constitution and the Maryland Constitution, making joinder of all class members impracticable.

33.    Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs' property is being held in custody under the Act by Defendant and, while in State custody, is subject to the same provisions of the Act that prohibit the State from compensating other owners of unclaimed property for interest or earnings received after deposit with the Defendant and prior to sale of the property or for use by the defendant of all monies held as unclaimed property.

34.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation.

35.    There are questions of law and fact common to the Rule 23(b)(2) Class, including the following:

a.   whether the State's use of, and retention of interest, dividends and other earnings or accruals on, unclaimed property for public purposes is a taking for which just compensation is due;

b.   whether the State's use of unclaimed property in its custody for public

purposes is a taking for which just compensation is due;

c.   the proper measure of compensation for the Class;

d.   the amount of interest, earnings and benefit realized by the State from

the use of the Class' unclaimed property; and

e.   the appropriate injunctive and declaratory relief for the Rule 23(b)(2)

Class.

36.   Plaintiffs' claims arise out of the same common course of conduct by
Defendant giving rise to the claims of the other members of the Rule 23(b)(2) Class.
Defendant has acted and refused to act on grounds that apply generally to the Rule 23(b)(2)
Class so that injunctive and declaratory relief are appropriate.

37.   The Fifth Amendment to the United States Constitution protects not only the
principal of unclaimed property in the custody of the State, but also the time-value of the
property (that is, earnings on the owner's money). Accordingly, upon return of their
unclaimed property, Plaintiffs and the members of the Rule 23(b)(2) Class is entitled to just
compensation for the State's use of their property in violation of the Fifth Amendment and
the analogous Article III, Section 40.  The State is not entitled to free use of unclaimed
property.

38.   While the amount of just compensation will depend on the circumstances, the
measure of just compensation should be based on the benefit to the State conferred from its
beneficial use of the property.  In all events, the State is not entitled to transform unclaimed
private property into an interest-free loan for the State's benefit.  The current version of
Section 17-319 was amended in 2004 to eliminate language requiring payment to unpaid

12

property claimants of the unclaimed property's value "plus interest at the rate equal to that earned by the State Treasurer each year on invested State funds."  *See* 2004 Md. Session Laws Ch. 110 (2004) (striking that language in Section 17-319).  An annual rate of interest equal to that earned by the State Treasurer on the State's investments would constitute just compensation here.

**COUNT I**
**CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE**
**RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS**
**UNCONSTITUTIONALITY UNDER FIFTH AMENDMENT**

39.     Plaintiffs reallege each of the foregoing paragraphs as though fully set forth herein.

40.     The Act violates the Fifth Amendment in that it directs that unclaimed property transferred to the custody of the State must be used by the State for public purposes without the payment of just compensation to property owners, upon claiming the property, for the State's public use of that property while in state custody.

41.     Plaintiffs and the Class are entitled to a declaration that the Act violates the Fifth Amendment.

42.     The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

43.     Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et  seq.*

**COUNT II**

## CLAIM FOR DECLARATORY AND PROSPECTIVE INJUNCTIVE
## RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS
## <u>UNCONSTITUTIONALITY UNDER ARTICLE III, SECTION 40</u>

44. Plaintiffs reallege each of the foregoing paragraphs as though fully set forth herein.

45. The Act violates Article III, Section 40 in that it directs that unclaimed property transferred to the custody of the State must be used by the State for public purposes without the payment of just compensation to property owners, upon claiming the property, for the State's public use of that property while in state custody.

46. Plaintiffs and the Class are entitled to a declaration that the Act violates Article III, Section 40.

47. The Defendant's unlawful course of conduct will continue absent a declaration from this Court that Defendant's conduct violates the rights of the Plaintiffs and the members of the Class and an injunction from this Court requiring the Defendant to change the course of conduct that is described above.

48. Plaintiffs and the members of the Class are entitled to a judgment declaring their rights with respect to the conduct set forth in this Complaint. Therefore, judgment may issue under 28 U.S.C. § 2201, *et seq.*

**WHEREFORE,** Plaintiffs pray that the Court enter judgment in their favor and against Defendant as follows:

A. Declaring that this action may be maintained as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of the Class defined above and that each of the Plaintiffs is a proper Class representative and designating their counsel as Class Counsel;

B.    Declaring that the State 's confiscation of interest, dividends, earnings, or other fruits of the property delivered to the State under the Act and the State's use of unclaimed private property for public purposes while in the State's custody are takings of property within the meaning of the Fifth Amendment and Article III, Section 40, for which the State is required to pay just compensation;

C.    Declaring that the proper measure of just compensation is the value of the property taken and returned to the owner, taking into account the value of money to the State of the benefit of the use of the property;

D,    Declaring the standard for Plaintiffs and the members of the Class for measuring the just compensation to the owner for the use of the property taken;

E.    Declaring that Defendant must pay just compensation according to the standard determined by this Court, and issuing an injunction to ensure that the State complies with that Declaration when returning property to owners of unclaimed property;

F.    Awarding Plaintiffs their attorneys' fees and reimbursement of their expenses, pursuant to applicable principles of equity and/or pursuant to 42 U.S.C. § 1988; and

G.    Awarding such other and further relief as the Court deems just and proper.

Dated: June 24, 2022

OF COUNSEL:

**SMITH, KATZENSTEIN & JENKINS LLP**
Michael C. Wagner (*Pro Hac Vice* to be submitted)
Julie M. O'Dell (*Pro Hac Vice* to be submitted)
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
(302) 652-8400
mcw@skjlaw.com

**BROWER PIVEN,**
**A PROFESSIONAL CORPORATION**

Charles Piven (Bar No. 00967)
3704 North Charles Street, #1301
Baltimore, Maryland 21218
Tel 410-332-0030
Fax 410-685-1300
piven@browerpiven.com

15

**THE LAW OFFICES OF ARTHUR SUSMAN**
Arthur Susman (*Pro Hac Vice* to be submitted)
1540 N. Lake Shore Drive
Chicago, Illinois 60610
(847) 800-2351