## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STEVEN ALBERT** and **BARRY DIAMOND**, individually and on behalf of all others similarly situated, | * |
| | * |
| | * |
| *Plaintiffs*, | * **Case No. 1-22-cv-01558-JRR** |
| **v.** | * |
| **PETER FRANCHOT**, in his official capacity as the Comptroller of the State of Maryland, | * |
| *Defendant*. | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant's Motion to Dismiss.  (ECF No. 5; the "Motion.")  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, by accompanying order, the Motion will be denied.

## BACKGROUND[1]

Plaintiffs Steven Albert and Barry Diamond bring this action challenging provisions of the Maryland statute concerning abandoned and unclaimed property, MD. CODE ANN., COM. LAW §§ 17-101 *et seq.*, (the "Act").  (ECF No. 1, ¶ 1.)  Plaintiffs are citizens and residents of Maryland. As defined by section 17-101 of the Act, they are also "owners" of property currently in Defendant's custody.  *Id.* ¶ 12.  Plaintiffs bring this class action on behalf of "all current owners of unclaimed property held by the Comptroller in the form of money."  *Id.* ¶ 1.  Defendant is the

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pleaded facts set forth in the Complaint.

Comptroller for the State of Maryland, and, in that position, is in charge of supervising and administering the Act. *Id.* ¶ 13. Plaintiffs sue Defendant in his official capacity.[2] *Id.*

## I.      Statutory Framework

The relevant defined terms of the Act are as follows:

> "Abandoned property" means personal property that is considered abandoned under this title.
>
> "Administrator" means the Comptroller.
>
> "Holder" means any means any person who is: (1) In possession of property subject to this title belonging to another; (2) A trustee, in the case of a trust; or (3) Indebted to another on an obligation subject to this title.
>
> "Owner" means (1) In the case of a deposit, a depositor or a person entitled to receive the funds as reflected on the records of the bank or financial organization; (2) In the case of a trust, a beneficiary; (3) In the case of other choses in action, a creditor, claimant, or payee; (4) In the case of abandoned property in federal custody, the person who is defined as the owner by any applicable federal law; or (5) Any person who has a legal or equitable interest in property subject to this title, or the legal representative of that person.

MD. CODE ANN., COM. LAW § 17-101(b)(1), (c), (i), (k).

The Act governs the State's disposition of abandoned property. Under the Act, a holder is required to attempt to notify the owner of presumed abandoned property; if the owner does not respond to such notice within 30 days, the property is considered abandoned. *Id.* § 17-308.2. If an owner does not respond to a holder's notice, the holder is required to file a report with the Administrator providing details about the abandoned property. Concurrently with the report, the holder is required to pay or deliver the abandoned property to the Administrator. *Id.* §§ 17-310, 17-312. On delivery of the abandoned property to the Administrator, the State assumes custody

---

[2] By election held November 8, 2022, Brooke E. Lierman was elected Comptroller of the State of Maryland. This action was filed in June 2022, when Peter Franchot served as Comptroller. For purposes of this opinion, this correction is substantively immaterial.

of same and is responsible for its safe keeping.  *Id.* §17-313.  Under section 17-311 of the Act, following receipt of a holder's report and the abandoned property, the Administrator is required to publish notice in a newspaper within 365 days from the date the report is filed setting forth: the names and last known addresses of persons listed in the report; a description of, and, information related to, the property; and a statement that a proof of claim may be filed by the owner to the Administrator.  *Id.* § 17-311(a) and (b).   In addition to the published notice, within 120 days of receipt of the report, the Administrator is required to mail notice to each person with an address listed on the report.  *Id.* § 17-311(d).  The notice must contain: a statement that the addressee appears to be entitled to property held by the Administrator; the name and address of the former holder of the property; and a statement that a proof of claim may be submitted to the Administrator. *Id.* § 17-311(e).

Section 17-316[3] provides is relevant part:

> (a) Except as provided in this subsection, all abandoned property under this title, other than money delivered to the Administrator under this title, shall be offered for sale by the Administrator within 1 year of delivery. The sale shall be to the highest bidder at public sale in whatever place in the State affords the most favorable market for the property involved. The Administrator may decline the highest bid and reoffer the property for sale if the price bid is insufficient. The Administrator need not offer any property for sale if the probable cost of sale exceeds the Administrator's estimation of the value of the property.

> (b) Any sale held under this section shall be preceded by a single publication of notice at least three weeks in advance of the sale in a newspaper of general circulation in the county where the property is to be sold.

---

[3] This section of the Act has more than one version with various effective dates.  The portion of the section cited to is effective until October 1, 2023.

Section 17-317[4] governs the disposition of funds received under the Act; it provides in relevant part:

> All funds received under this title, including the proceeds of the sale of abandoned property under § 17-316 of this subtitle, shall be credited by the Administrator to a special fund.
>
> The Administrator shall retain in the special fund at the end of each fiscal year, from the proceeds received, an amount not to exceed $50,000, from which sum the Administrator shall pay any claim allowed under this title.

§ 17-317(a)(1)(i)-(ii).

> After deducting all costs incurred in administering this title from the remaining net funds the Administrator shall distribute $8,000,000 to the Maryland Legal Services Corporation Fund established under § 11-402 of the Human Services Article.

§ 17-317(a)(2).

> Subject to subparagraph (ii) of this paragraph, the Administrator shall distribute all unclaimed money from judgments of restitution under Title 11, Subtitle 6 of the Criminal Procedure Article to the State Victims of Crime Fund established under § 11-916 of the Criminal Procedure Article to assist victims of crimes and delinquent acts to protect the victims' rights as provided by law.
>
> If a victim entitled to restitution that has been treated as abandoned property under § 11-614 of the Criminal Procedure Article is located after the money has been distributed under this paragraph, the Administrator shall reduce the next distribution to the State Victims of Crime Fund by the amount recovered by the victim.

§ 17-317(a)(3)(i)-(ii).

> For fiscal year 2024, after making the distributions required under paragraphs (2) and (3) of this subsection, the Administrator shall distribute $14,000,000 from the remaining net funds to the Access to Counsel in Evictions Special Fund under § 8–909 of the Real Property Article.

§ 17-317(a)(4).

---

[4] This section of the Act has more than one version with varying effective dates.  The portion of the section cited to is effective until January 1, 2024.

> After making the distributions required under paragraphs (2), (3), and (4) of this subsection, the Administrator shall distribute the remaining net funds not retained under paragraph (1) of this subsection to the General Fund of the State.

§ 17-317(a)(5).

Any person who claims a legal interest in any property delivered to the State under the Act must file a claim to the property or the proceeds from its sale on the form prescribed by the Administrator. *Id.* § 17-318.   The Administrator must consider any claim filed under the Act and, if the claim is "allowed," the Administrator is required to make immediate payment to the claimant. *Id.* § 17-319.  "In satisfying a claim the Administrator shall pay the claimant an amount equal to the sales price obtained at the public sale." *Id.* § 17-319(c).  In its current form, the Act is silent as to accrued interest on property held by the State.  Section 17-314, which previously allowed for "Interest on property delivered to Administrator," was repealed in 2004.

## II.   Procedural Background

Plaintiffs assert that the Act allows for a taking in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article III, Section 40 of the Maryland Constitution.  (ECF No. 1, ¶ 1.)  According to Plaintiffs, the Act deprives owners just compensation because it does not provide recovery of "interest or dividends or other increments that accrue on the property after delivery to the State . . . ." *Id.* ¶ 5.

On June 24, 2022, Plaintiffs filed the Class Action Complaint[5] (the "Complaint") for declaratory and injunctive relief.  The Complaint sets forth two counts:  Claim for Declaratory and Prospective Injunctive Relief of Under the Fifth Amendment (Count I); and Claim for Declaratory

---

[5] Plaintiffs seek class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

and Prospective Injunctive Relief Under Article III, Section 40 of the Maryland Constitution (Count II).  (ECF No. 1.)  The prayer for relief seeks a declaration by this court:

- that the State's confiscation of interest, dividends, earnings, or other fruits of the property delivered to the State under the Act and the State's use of unclaimed private property for public purposes while in the State's custody are takings of property within the meaning of the Fifth Amendment and Article III, Section 40, for which the State is required to pay just compensation;

- that the proper measure of just compensation is the value of the property taken and returned to the owner, taking into account the benefit to the State by its use of the unclaimed property in its custody;

- setting forth the appropriate standard for measuring just compensation owed to an owner of unclaimed property that is used by the State while in its custody;

- that Defendant must pay just compensation according to the standard determined by this court.

(ECF No. 1 at 14-15.)  Additionally, Plaintiffs seek an injunction requiring the State to comply with any just compensation standard determined by the court, as well as attorney's fees and costs. *Id.* at 15.

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that, to the extent Plaintiffs seek retroactive relief, those claims are barred by the Eleventh Amendment; Plaintiffs lack standing to bring this action; Plaintiffs claims are not ripe for adjudication; and the Complaint fails to state a facial challenge to the constitutionality of the Act.  (ECF No. 5-2 at 2-3.)

## LEGAL STANDARDS

### I.      Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

Defendant states that he "is attacking both the complaint on its face, asserting that the complaint 'simply fails to allege facts upon which subject matter jurisdiction can be based,' as well as attacking the existence of subject matter jurisdiction in fact, quite apart from any pleadings." (ECF No. 5-1 at 8.) That notwithstanding, Defendant's 12(b)(1) arguments attack Plaintiffs' pleading, and do not present a factual challenge to subject matter jurisdiction. Indeed, Defendant argues that the court lacks subject matter jurisdiction over Plaintiffs' claims because the Complaint fails to allege facts that, if true, demonstrate Plaintiffs have standing or that their claims are ripe for adjudication. Accordingly, Defendant's 12(b)(1) challenge will be evaluated

in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true per *Trump* and *Kerns.*

## II.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint."  It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)).  The court, however, is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards,* 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## ANALYSIS[6]

### I.  Subject Matter Jurisdiction

#### A.     Sovereign Immunity

Defendant allows that he construes the Complaint to seek only prospective and injunctive relief, but argues that were the court to construe the Complaint to seek damages or retroactive relief, those claims would be barred by the Eleventh Amendment.

---

[6] Plaintiffs bring claims under both the Fifth Amendment of the United States Constitution and Article III, Section 40 of the Maryland Constitution.  "The Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 40, of the Maryland Constitution have the same meaning and effect, and 'it is well established that the decisions of the Supreme Court are practically direct authorities' for both provisions." *Neifert v. Dep't of the Ev't,* 395 Md. 486, 516 n.33 (2006) (quoting *Md. Green Party v. Md. Bd. of Elections,* 377 Md. 127, 166 (2003)) (citations omitted). Accordingly, the court's analysis regarding Plaintiffs' claims under the United States Constitution applies to Plaintiffs' claims under the Maryland Constitution.

Under the Eleventh Amendment, states generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress. *Bd. of Tres. v. Garrett,* 531 U.S. 356, 363-64 (2001). "[F]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v. Owens,* 352 F.3d 842, 844-45 (4th Cir.2003) (citations omitted). "The Eleventh Amendment does not preclude private individuals from bringing suit against State officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law." *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292 (4th Cir. 2001). *Id.*

The *Ex parte Young* doctrine provides that "a federal court has jurisdiction over a suit against a state officer to enjoin official actions that violate federal law, even if the State itself is immune from suit under the Eleventh Amendment." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 288 (1997). Even though "the State itself will have a continuing interest in the litigation whenever State policies or procedures are at stake," *Coeur D'Alene Tribe*, 521 U.S. at 269, "a court decree enjoining a State officer from committing future violations of federal law generally will not upset the careful federal balance established by the Constitution and confirmed by the Eleventh Amendment." *Bragg,* 248 F.3d at 292. "To preserve this balance, however, this court "must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Id.* (quoting 521 U.S. at 269). "Just because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection." *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279, 294 (4th Cir. 2001). "Such empty formalism would improperly sacrifice the real interests served by the Eleventh Amendment." *Id*. (internal quotations and citation omitted). Rather, just as the Court

did in *Coeur D'Alene Tribe*, this court must evaluate the degree to which the State of Maryland's sovereign interest would be adversely affected by Plaintiffs' federal suit seeking prospective declaratory and injunctive relief against the Comptroller.  Additionally, this court must consider the extent to which federal, rather than state, law must be enforced to vindicate Plaintiffs' federal interest.  *Bragg,* 248 F.3d at 293.

In *Ford Motor Co. v. Department of Treasury of Ind.,* the Supreme Court held that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  323 U.S. 459, 464 (1945).  That notwithstanding, "[t]he Supreme Court has [] repeatedly recognized that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."  *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 662 (1989)

The court agrees with Defendant that the Complaint seeks prospective injunctive and declaratory relief as allowed under the *Ex parte Young* doctrine.  Plaintiffs' requested relief seeks, to their way of seeing it, to bring the Act into compliance with the Takings Clauses of the United States Constitution and the Maryland Constitution.  That Defendant may have to spend state funds to effect compliance with federal law does not remove Plaintiffs' claims from the *Ex parte Young* exception.

### B.  Article III Standing

Standing is an essential component of the case-or-controversy requirement of Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "A justiciable case or controversy requires a 'plaintiff [who] has alleged such a personal stake in the outcome of the controversy as

to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Planned Parenthood of South Carolina v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004) (alteration in original) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). "To satisfy the constitutional standing requirement, a plaintiff must provide evidence to support the conclusion that: (1) 'the plaintiff . . . suffered an injury in fact--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there [is] a causal connection between the injury and the conduct complained of'; and (3) 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted)).

"[T]he procedural posture of the case dictates the plaintiff's burden as to standing." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017); *see also Lujan*, 504 U.S. at 561 (holding that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation"). "Thus, when a defendant challenges a plaintiff's standing, we analyze the challenge differently depending on the stage of litigation at which the challenge is brought and the substance of the defendant's arguments." *Overbey v. Mayor of Balt.*, 930 F.3d 215, 227 (4th Cir. 2019). Accordingly, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, but at the summary judgment stage, plaintiffs must set forth by affidavit or other evidence specific facts supporting standing." *In re Marriott Int'l, Inc.*, 341 F.R.D. 128, 140-41 (D. Md. 2022) (quoting *Lujan*, 504 U.S. at 561).

### 1.    Injury in Fact

Defendant asserts Plaintiffs fail to allege facts showing that they have suffered an injury. (ECF No. 5-2 at 11.)  Specifically, Defendant argues that Plaintiffs do not allege that they have been denied interest or other compensation regarding their property, nor do they allege specific details about any particular property in State custody under the Act.  *Id.*  Further, Defendant argues that Plaintiffs fail to allege that they filed a claim under the Act for return of property in State custody.   Plaintiffs counter that they have suffered an injury in fact in the form of the State's use of their private property without the availability of just compensation. (ECF No. 8 at 2.)

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560)).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at 340.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . ."  *In re Marriott Int'l, Inc.*, 341 F.R.D. at 140-41.

The crux of Plaintiffs' Complaint is that the Act mandates State use of unclaimed property for public benefit without providing any means for interest or other fruits of the property to be paid to rightful owners who reclaim their property, thereby resulting in an unjust taking in violation of the federal and state constitutions.

Plaintiffs allege:

> The Act applies to personal property that is held by a third party (the "holder"), for example, a bank, insurance company, corporation, or public utility. Under the Act such property is "presumed abandoned" if the owner, as defined in the Act, has not communicated in writing

with the holder concerning the property or has not otherwise given an indication of interest in the property within certain time limits provided in the Act. Property that is "presumed abandoned" must be delivered to Defendant's custody.

The Takings Clause of the Fifth Amendment to the United States Constitution (the "Fifth Amendment") prohibits the government from using private property for public purposes without compensation to the property owner: "nor shall private property be taken for public use, without just compensation."

The Takings Clause of Article III, Section 40 of the Maryland Constitution ("Article III, Section 40") contains a similar proscription: "The General Assembly shall enact no Law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation."

Nevertheless, under the Act "presumed abandoned" property, proceeds from any sale of any such property that was not in cash form when it was taken into state custody, and earnings on any such property and all cash delivered as presumed abandoned to the Defendant, are all used to fund state programs or operations until claimed by an "owner" of the property. An owner may reclaim property from the State; however, the Act provides that an owner who files a valid claim is entitled only to the property turned over to the State by the holder (or the proceeds from the sale of that property) and not to any interest or dividends or other increments that accrue on the property after delivery to the State or to the payment of just compensation to an owner of presumed abandoned property held in the form of cash.

The Act does not provide for compensation to any owner for the State's taking of these fruits of the property and the use of that property to fund State obligations during the period it is in the State's custody.

Accordingly, the Act effectively provides the State with an interest-free loan of unclaimed private property funds that the Act directs to be co-mingled with the State's General Fund and certain of the State's special-purpose funds while in the Comptroller's custody, without providing any just compensation to claiming property owners for the State's use of those private property funds while in the Comptroller's custody.

***

13

> Plaintiffs are and have been at all relevant times citizens and residents of Maryland. Plaintiffs are each an "owner" of property, as defined in Section 17-101 of the Act, that is currently held in custody pursuant to the Act by Defendant.

(ECF No. 1, ¶¶ 2-7, 12.)

With respect to Defendant's contention that Plaintiffs fail to allege that they were not paid interest or justly compensated, the Supreme Court's analysis in *Knick v. Twp. of Scott* is instructive:

> The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner. That principle was confirmed in *Jacobs v. United States*, 290 U.S. 13, 54 S. Ct. 26, 78 L. Ed. 142 (1933), where we held that a property owner found to have a valid takings claim is entitled to compensation as if it had been "paid contemporaneously with the taking"—that is, the compensation must generally consist of the total value of the property when taken, plus interest from that time. *Id.*, at 17, 54 S. Ct. 26, 78 L. Ed. 142 (quoting *Seaboard Air Line R. Co. v. United States*, 261 U.S. 299, 306, 43 S. Ct. 354, 67 L. Ed. 664 (1923)).
>
> ***
>
> *Jacobs* made clear that, no matter what sort of procedures the government puts in place to remedy a taking, a property owner has a Fifth Amendment entitlement to compensation as soon as the government takes his property without paying for it.

*Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019).

With respect to Defendant's argument that Plaintiffs have not pled an injury in fact because they do not allege that they submitted claims to the Comptroller for abandoned property in State custody, *Knick* provides further guidance.  The *Knick* Court overruled its holding in *Williamson Cty. Reg'l. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that "a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights—and thus cannot bring a federal takings claim in federal court—

14

until a state court has denied his claim for just compensation under state law." *Knick,* 139 S. Ct. at 2167.

In overruling *Williamson*, the Supreme Court explained in *Knick*:

> We now conclude that the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled. A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it. That does not mean that the government must provide compensation in advance of a taking or risk having its action invalidated: So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities. But it does mean that the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under §1983 at that time.
>
> ***
>
> Although *Jacobs* concerned a taking by the Federal Government, the same reasoning applies to takings by the States. The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force. The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under §1983.
>
> *Williamson County* had a different view of how the Takings Clause works. According to *Williamson County*, a taking does not give rise to a federal constitutional right to just compensation at that time, but instead gives a right to a state law procedure that will eventually result in just compensation. As the Court put it, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the [Takings] Clause until it has used the procedure and been denied just compensation." 473 U. S., at 195, 105 S. Ct. 3108, 87 L. Ed. 2d 126. In the absence of a state remedy, the Fifth Amendment right to compensation would attach immediately. But, under *Williamson County*, the presence of a state remedy qualifies the right, preventing it from vesting until

exhaustion of the state procedure. That is what *Jacobs* confirmed could not be done.

***

A later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place. The violation is the only reason compensation was owed in the first place. A bank robber might give the loot back, but he still robbed the bank. The availability of a subsequent compensation remedy for a taking without compensation no more means there never was a constitutional violation in the first place than the availability of a damages action renders negligent conduct compliant with the duty of care.

In sum, because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time.

*Id.* at 2167-68, 2171-72.

The court is satisfied that Plaintiffs have pled a taking – which is the injury in fact. The failure to allege that they were not compensated, or did not seek compensation from the State, is not required for Plaintiffs to have standing under the Takings Clauses of the United States and Maryland Constitutions. It is the State's custody of unclaimed property, and use of it for public benefit without compensating the owner, that qualifies as a taking. Under the Act, compensation is made subsequent to the State taking possession and making use of private property. *Knicks* unequivocally holds that a constitutional taking and attendant injury arise at the moment the State exerts custody over the property. 139 S. Ct. at 2172. Plaintiffs' Article III injury is the taking itself, notwithstanding the Act's procedure through which an owner may seek recompense. The court is satisfied that Plaintiffs have adequately alleged an injury in fact for Article III standing.

2.    <strong>Traceability</strong>

Defendant argues that absent an actual injury, no chain of causation is traceable to anyone – including Defendant. (ECF No. 5-2 at 13.) Building upon their argument that the exertion of custody (the taking) alone is the Article III injury in fact, Plaintiffs counter that the Complaint

adequately alleges a chain of causation as the State's failure "to provide for the payment of just compensation for property it takes into its custody and uses for public benefit pursuant to the Act." (ECF No. 8 at 18.)   Plaintiffs are correct.   "The 'fairly traceable' requirement does not strictly demand proximate causation, but there must be a 'sufficient connection between the plaintiff's injury and the conduct of the defendant, such that a court ought to assert jurisdiction over the dispute.'" *Alvarez v. Azar*, 2021 U.S. Dist. LEXIS 182921, at *10 (D. Md. Sept. 23, 2021) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315-16 (4th Cir. 2013).   "This requirement is designed in part to ensure that an injury is 'not the result of the independent action of some third party not before the court.'" *Id.* at *10-11 (quoting *Lujan*, 504 U.S. at 560).

Plaintiffs allege that, pursuant to the Act, Defendant exerts custody and control over private property for public use and fails to pay the owner its proper value.   The alleged injury – the taking – occurs pursuant to the Act, which Defendant enforces as Comptroller of the State.   The traceability factor of standing is met.

### 3.   Redressability

Defendant argues that because Plaintiffs have not suffered an injury in fact, there is nothing to be redressed.   (ECF No. 5-2 at 13.)

"An injury is redressable if it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"   *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S, 167, 181 (2000)).   It is sufficient "that the court's decision would 'significantly affect' plaintiff's injuries."   *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011) (quoting *National Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 6 (D.C. Cir. 2005)).

As set forth above, the court finds Plaintiffs have ably pled an injury in fact that is traceable to Defendant.  The relief sought by Plaintiffs, if granted, would at the very least require Defendant to "pay just compensation" as determined by the court.  (ECF No. 1 at 15.)  Plaintiffs' alleged injury satisfies the redressability element of standing.

### C.      Ripeness

Defendant next argues that because Plaintiffs have not suffered an injury in fact, their demand for declaratory and injunctive relief is, in essence, a demand for a disallowed advisory opinion on a hypothetical circumstance.  As such, Defendant argues, the Complaint must be dismissed for violation of the ripeness doctrine.  (ECF No. 5-2 at 15.)

"An Article III justiciability gateway, the ripeness doctrine prevents federal courts from weighing in on a controversy until it is presented in 'clean-cut and concrete form.'"  *Johnston v. Lamone*, 401 F. Supp. 3d 598, 607 (D. Md. 2019) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand and Lansdowne, LLC*, 713 F.3d 187, 198 (4th Cir. 2013)) (citations omitted).  "To determine if a case is ripe," a federal court must "balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration."  *Lansdowne*, 713 F.3d at 198.  "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).  "The hardship prong is measured by the immediacy of the threat and the burden imposed on the plaintiffs who would be compelled to act under threat of enforcement of the challenged law."  *Id.* (quoting *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).

As explained above, Plaintiffs adequately allege an injury in fact that is traceable to Defendant and redressable by court action. Plaintiffs' claims arose at the time of the taking;

therefore, their claims are ripe for this court to determine whether the Act complies with the requirements of the Takings Clauses of the Fifth Amendment and Article III, Section 40.

## II.     12(b)(6) Motion

### A.     Facial Challenge to the Constitutionality of the Act

Defendants argue that the Complaint does not adequately plead a facial challenge to the Act because although Plaintiffs allege they would be prohibited from receiving interest (by operation of the Act) if they filed a claim, they have not filed any such claim.   (ECF No. 5-2 at 17.)  Defendant further asserts that the Act is silent regarding interest and does not prohibit the Comptroller from paying interest on property used by the State upon receipt of an owner's claim. *Id.* at 18.

 "The essential elements of a takings claim are (1) a taking of private property (2) for public use (3) without just compensation." *Kim v. Dome Entm't Ctr., Inc.,* 2009 U.S. Dist. LEXIS 132842 *8 (N.D. Tex., Sept. 2, 2009) (quoting *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998)).

The Complaint alleges:

> Once a holder determines property in its possession is "presumed abandoned" within the meaning of the Act, the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the office of the Comptroller. *Id.*, §§ 17-310, 17-312. Upon delivery to the Comptroller, "the State shall assume custody and shall be responsible for its safekeeping." *Id.*, § 17-313. If the property is not cash, securities or negotiable instruments, Defendant is required to offer to sell the property within one year to the highest bidder at a public sale "in whatever place in the State affords the most favorable market for the property involved." *Id.*, § 17-316. The unclaimed property and proceeds from the sale of unclaimed property are to be held in custody for the owner, who can reclaim the property from the State at any time, but without payment of any compensation for the state's use of that property for the property's time in the Comptroller's custody. *Id.*, § 17-319.

Indeed, when the State last amended Section 17-319, in 2004, the amendment deleted language requiring the Comptroller to pay claims for unclaimed property "plus interest at a rate equal to that earned by the State Treasurer each year on invested state funds." 2004 Md. Laws Ch. 110 (2004). The 2004 amendment to the Act also deleted language requiring claims of unclaimed property in the form of interest-bearing securities upon delivery to the State to be paid out with interest accrued on the security while in State custody. *Id.* (repealing Section 17-314).  The 2004 amendment recites in preamble that it was enacted for "the purpose of repealing certain provisions that require the administrator of abandoned property to pay interest to certain claimants; and generally relating to the payment of interest on abandoned property." *Id.*

The Act directs the Comptroller to deposit all funds received pursuant to the Act, including funds from the liquidation of property, into the State treasury for State use. The Act allocates certain dollar amounts, sometimes limited to certain fiscal years, for various State projects, including the Maryland Legal Services Corporation ($8,000,000), the State Victims of Crime Fund (all unclaimed criminal restitution awards), tax clinics for low income residents ($250,000 for 2022-2023 only), and the Access to Counsel in Evictions Special Fund ($14,000,000 for 2024 only), with all remaining amounts received by the Comptroller flowing to the State's General Fund. Md. Code, Com. Law § 17-317. Before those allocations, the Comptroller is required (a) to deposit in a "special fund" a sum "not exceeding $50,000" from which the Comptroller shall pay owner claims and (b) deduct "all costs incurred in administering this title from the remaining net funds." *Id*.

***

In recent years, the General Fund has been allocated the significant majority of unclaimed property received under the Act. By law, the State's General Fund and its special-purpose funds are invested by the State treasury, with investment proceeds allocated to the specific funds or to the General Fund. *See*, e.g., Md. Code, Hum. Svcs. § 11-402(d)(1) (Maryland Legal Services Corporation Fund retains all returns on investments of fund assets); Md. Code, Tax Gen. § 1-207(i)(2) (Investment earnings on the Tax Clinics for Low-Income Marylanders Fund "shall be credited to the General Fund of the State"). Thus, no return on the State's investment of unclaimed property held in State custody is allocated toward the owners of the unclaimed property. Indeed, the statutory provision establishing the "special fund" annually allocated $50,000 of unclaimed property

proceeds, for payment of unclaimed property owner claims, does not appear to permit investment of such funds for the benefit of owner claimants. Md. Code, Com. Law § 17-317. 22.

 Under the Act, accordingly, unclaimed property transferred to the custody of Defendant and the State pursuant to the Act is invested alongside the State's General Fund and certain of the state's other special-purpose funds, and thus earns interest, dividends or other accruals and/or is held in interest-bearing accounts or other investment instruments. *By law, such interest, dividends, accruals, and other investment returns must inure to the sole benefit of the State's General Fund and special-purpose funds, including those identified in the Act, and not to any fund dedicated to the payment of unclaimed property claims.*

***

Moreover, *the Act does not allow owners of unclaimed property to receive interest, dividends or other income or increments on any property that is liquidated or is a cash account while it is being used by the State as custodian, regardless of the nature of the property. See* 2004 Md. Laws Ch. 110 (2004) (repealing statutory language from the Act that had required payment of interest on unpaid property claims "at a rate equal to that earned by the State Treasurer each year on invested state funds").

***

According to the Defendant's online records, Defendant holds Plaintiffs' property in custody. Plaintiffs are each the owner under the Act with respect to their respective items of property. Defendant has at all times since delivery held Plaintiffs' property in custody subject to its being claimed by or on behalf of each of the Plaintiffs.

While the Defendant held Plaintiffs' property in custody, pursuant to the Act, the State has converted any of Plaintiffs' non-cash unclaimed property into cash and has used Plaintiffs' property for public purposes, including by investing Plaintiffs' property and earning interest or other accruals, and otherwise using it to fund the State's operations and programs.

*Under the Act, should each of the Plaintiffs claim his property, Defendant will pay each Plaintiff a cash payment equal to the total sum of the amounts stated in State records as the cash amount of the unclaimed property, but will not pay any just compensation to either Plaintiff for the State's use of that property during the period of custody.*

(ECF No. 1 ¶¶ 17-19, 21-22, 25, and 28-30; emphasis added.)

21

Plaintiffs allege an interest in unclaimed property held by the State pursuant to the Act. Plaintiffs further allege that the Act requires public benefit use of unclaimed private property held by the State per the Act.  Finally, Plaintiffs allege that the Act effectively disallows a demand for, and reimbursement of, interest, thereby denying Plaintiffs just compensation for the State's use of their private property while in its custody.  Therefore, at the pleading stage of the litigation, Plaintiffs have sufficiently alleged a constitutional challenge to the Act.

### B.      Relief Sought

Defendant argues that "where a plaintiff fails to allege facts plausibly stating a cognizable claim, declaratory and injunctive relief cannot stand alone and should be dismissed."  (ECF No. 5-2 at 18.)  Because the court declines to dismiss Plaintiffs' claims at this stage of the litigation, Defendant's argument that Plaintiffs are not entitled to declaratory or injunctive relief because such relief cannot stand as an independent cause of action is without merit.

## CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be denied.


/S/
_____
Julie R. Rubin
United States District Judge

June 16, 2023