## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STEVEN G. ALBERT,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Civil No. 1:22-cv-01558-JRR** |
| **PETER FRANCHOT,** | |
| **Defendant.** | |

### MEMORANDUM OPINION

Pending before the court is Defendant's[1] (the "Comptroller") Motion for Reconsideration (ECF No. 16; the "Motion"). No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

### I.      BACKGROUND

Plaintiffs Steven Albert and Barry Diamond initiated this class action against the Comptroller challenging the Maryland abandoned and unclaimed property statute, MD. CODE ANN., COM. LAW §§ 17-101, *et seq.,* (the "Act"). Plaintiffs bring this class action on behalf of themselves as owners of property governed by the Act and "all current owners of property held by the Comptroller in the form of money." (ECF No. 1, ¶ 1.) Specifically, Plaintiffs allege that the Act allows for a "taking" without just compensation. The Complaint contains two counts: Claim for Declaratory and Prospective Injunctive Relief under the Fifth Amendment (Count I); and Claim

---

[1] The Comptroller of Maryland is the Defendant in this case. Brooke Lierman is the current Comptroller of Maryland and is sued in her official capacity; when filed, the Complaint named then Comptroller Peter Franchot.

for Declaratory and Prospective Injunctive Relief under Article III, Section 40 of the Maryland Constitution (Count II).  (ECF No. 1.)

On August 22, 2022, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  (ECF No. 5.)  Defendant argued that the court lacks subject matter jurisdiction over Plaintiffs' claims because Defendant enjoys Eleventh Amendment sovereign immunity to the extent Plaintiffs' claims seek retroactive relief; Plaintiffs lack standing; and the claims are not ripe.  (ECF No. 5-2 at 2-3.)  Additionally, Defendant argued that the Complaint fails to allege a facial challenge to the constitutionality of the Act.  *Id.*

On June 16, 2023, the court denied the motion to dismiss.  Defendant timely filed the instant Motion.  (ECF No. 16.)  Thereafter, Defendant filed four supplements.  (ECF Nos. 23, 24, 29, and 32).[2]

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  FED. R. CIV. P. 54(b).  *See also Fayetteville Inv'rs v. Commercial Builders, Inc.,* 936 F.2d 1462 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment."); and Local Rule 105.10 (permitting a motion for reconsideration within fourteen days of the subject order).  Reconsideration is appropriate "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Hutchinson v. Staton*, 994 F.2d 1076,

---

[2] Defendant filed her most recent supplement on January 18, 2024 (ECF No. 32) to which Plaintiffs have not yet responded.  The fourth supplement reiterates Defendant's arguments set forth in the Motion and the first three supplements.

1083 (4th Cir. 1993).

## III.   <u>ANALYSIS</u>

Defendant moves this court to reconsider its decision regarding subject matter jurisdiction on grounds of sovereign immunity, standing, and ripeness.  Defendant argues that Plaintiffs lack standing because there was no constitutional "taking."  (ECF No. 16.)  The supplements reiterate the arguments set forth in the Motion  and raise additional arguments based on sovereign immunity and ripeness and commend the court's attention to several opinions of sister courts issued after the court denied the motion to dismiss: (1) *Maron v. Patronis,* Case No. 4:22-cv-00255-RH-MAF (N.D. Fla. Sept. 5, 2023); (2) *Garza v. Woods*, Case No. 2:22-cv-01310-PHX-JJT, 2023  WL 5608414  (D. Ariz. Aug. 30, 2023); (3) *Light v. Davis*, 1:22-cv-00611-CJB, 2023 WL 6295387 (D. Del. Sept. 27, 2023); and (4) *James v. Hegar*, 86 F.4th 1076 (5th Cir. 2023).  The court discusses these cases below.

### A.   <u>Sovereign Immunity</u>

#### 1.   *State Constitutional Claim (Count II)*

Defendant, by way of a footnote in her first supplement, asserts that Plaintiffs' claim for violation of the Maryland Constitution (Count II) is barred by Eleventh Amendment sovereign immunity by operation of the holding in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).[3]  (ECF No. 23 at 3 n.3.)  Plaintiffs counter that the *Ex parte Young* exception  (209 U.S. 123 (1908)) applies to state law claims seeking prospective relief against state officials

---

[3] Defendant proffers that her motion to dismiss sought dismissal of Plaintiffs' state constitutional claim based on sovereign immunity.  (ECF No. 23 at 3 n.3.)  While Defendant did raise sovereign immunity in her motion to dismiss, the argument focused on the relief sought, not whether Plaintiffs' claims were rooted in federal or state law.  *See* ECF No. 5-2 at 9 (stating that "Defendant interprets plaintiffs' complaint as not seeking damages but only prospective injunctive and declaratory relief. If the court were to construe the complaint as including a claim for damages or retroactive relief, those claims would be barred by the Eleventh Amendment because states are immune from claims for damages brought in federal court.")  Normally, it is improper to raise novel arguments in a motion for reconsideration; however inasmuch as the Motion bears on the court's subject matter jurisdiction, it is appropriately raised at any time.

asserted in federal court.

In *Pennhurst*, the Supreme Court held that the Eleventh Amendment bars claims against state officials on the basis of state law regardless of whether the requested relief is prospective or retroactive. 465 U.S. at 106. In so holding, the Court examined the doctrine born of *Young* and *Edelman v. Jordan*, 415 U.S. 651 (1974). The Court explained that *Young* held that "a suit challenging the constitutionality of a state official's action is not one against the State," and that "the theory of the case was that an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" *Pennhurst,* 465 U.S. at 102 (quoting *Young*, 209 U.S. at 160) (alterations in original). The Court further explained that *Edelman* held that claims for violation of federal law seeking retroactive relief are barred by the Eleventh Amendment. *See id.* at 102-103 (explaining that "*Edelman* held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief.") Against the backdrop of *Young and Edelman*, the *Pennhurst* Court reasoned that when a plaintiff alleges that a state official violated state law, "the entire basis for the doctrine of *Young* and *Edelman* disappears." 465 U.S. at 106. The Court held that "*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law." *Id.*

Plaintiffs' state constitutional claims set forth in Count II cannot survive the holdings of *Pennhurst*. The Supreme Court expressly rejects Plaintiffs' position that *Ex parte Young* applies to state law claims for prospective relief. *Ex parte Young* is inapplicable to state law claims against state officials no matter the relief. Accordingly, Plaintiffs' state constitutional claims are barred by Eleventh Amendment sovereign immunity and will be dismissed. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005) (dismissing the plaintiff's state constitutional claims and holding

4

that "*Pennhurst* dictates that the claim must be dismissed" because "*Ex parte Young* allows prospective relief against state officers only to vindicate rights under federal law"); *Alleyne v. New York State Educ. Dep't.*, 691 F. Supp 2d 322, 335 (N.D.N.Y. 2010) (dismissing the plaintiff's state constitutional claims pursuant to the holding in *Pennhurst.*)

### 2.    *Retroactive Money Damages*

Despite Defendant's assertion in her motion to dismiss that "Defendant interprets plaintiffs' complaint as not seeking damages but only prospective injunctive and declaratory relief," (ECF No. 5-2 at 9) on reconsideration, she now argues that Plaintiffs seek "specific monetary relief" which "would require payment from the State's general fund," and "such relief is clearly retroactive and not prospective." (ECF No. 28 at 8-9.) Defendant relies on the holding in *Gaza v. Woods* that "because the monies sought by Plaintiffs and the putative class in the action would be monies coming principally from the State's general fund, Plaintiffs' claims for monetary compensation are at odds with the Eleventh Amendment, and Defendants are entitled to sovereign immunity for those claims." *Gaza,* at *9-10

This court addressed Defendant's argument in its memorandum opinion on the motion to dismiss. (ECF No. 12.) Specifically, this court explained:

> In *Ford Motor Co. v. Department of Treasury of Ind.,* the Supreme Court held that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." 323 U.S. 459, 464 (1945). That notwithstanding, "[t]he Supreme Court has [] repeatedly recognized that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 662 (1989).

(ECF No. 12 at 10.) Based on these well-settled legal principles, this court concluded:

> The court agrees with Defendant that the Complaint seek prospective injunctive and declaratory relief as allowed under the *Ex parte Young* doctrine. Plaintiffs' requested relief seeks, to their way of seeing it, to bring the Act into compliance with the Takings Clauses of the United States Constitution and the Maryland Constitution. That Defendant may have to spend state funds to effect compliance with federal law does not remove Plaintiffs' claims from the *Ex parte Young* exception.

*Id.*

Although the court will dismiss Count II, its analysis regarding sovereign immunity as to Plaintiffs' federal constitutional claims (Count I) remains intact. The court declines to reconsider or disturb its ruling on the basis that another court in a separate jurisdiction reached a different conclusion. The *Gaza* case is persuasive authority and not binding on this court. *Gaza* reveals neither a "change in controlling legal precedent" nor "clear error of law." *Hutchinson*, 994 F.2d at 1083. Accordingly, the Motion will be denied on this basis.

## B.   Standing

### 1. *Texaco Inc. v. Short*

Defendant asserts that this court's ruling that Plaintiffs allege a "taking" of their property and therefore have Article III standing is based on "clear legal error and would work manifest injustice." (ECF No. 16-1 at 1.) Specifically, Defendant avers the court's ruling is "contrary to binding Supreme Court precedent in *Texaco Inc. v. Short*, 454 U.S. 516, 530 (1982), which holds that there is no 'taking' when the government rescinds an owner's rights in abandoned property." (ECF No. 16-1 at 1.) Plaintiffs counter that *Texaco* is inapposite because it "is not a takings case." (ECF No. 21 at 6.) *Texaco* involved termination of mineral rights by operation of statute following a period of non-use (the Indiana Mineral Lapse Act), whereas the instant case involves an unclaimed property statute. Plaintiffs further argue that Defendant fails to appreciate the

6

difference between property that is considered "abandoned" because the ownership interest ceases and property that is "presumed abandoned" and taken into State custody under unclaimed property statutes like the Act. *Id.* (citing *Cerajeski v. Zoeller,* 735 F.3d 577, 582-83 (7th Cir. 2013)).

The Supreme Court in *Texaco* addressed the constitutionality of a state mineral lapse statute that automatically reverted a mineral interest to a third-party upon failure to comply with requirements of the statute. 454 U.S. at 518-19. The Indiana Mineral Lapse Act provided:

> Any interest in coal, oil, gas, and other minerals, shall, if unused for a period of 20 years, be extinguished, unless a statement of claim is filed in accordance with section five hereof, and the ownership shall revert to the then owner of the interest out of which it was carved.

*Id.* at 518 n.3. Based on the statute, the appellants' mineral interest lapsed and ownership of the same reverted to the appellees. *Id.* at 522. The appellants challenged the constitutionality of the mineral lapse statute on three bases, only one of which is relevant to the court's resolution of the Motion — whether the statute "effected a taking of private property for public use without just compensation." *Id.* The Court held that the mineral lapse statute did not constitute a Fifth Amendment "taking" requiring just compensation. *Id.* at 528.

The thrust of Defendant's argument rests on the *Texaco* Court's discussion regarding a property owner's neglect or failure to use the interest, thereby resulting in abandonment. Importantly, the *Texaco* Court's analysis hinges upon the plain language of the statute. The Court explained that "in ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect." 454 U.S. at 530. The "neglect" is an owner's failure to take the actions imposed by law; and the "law" at issue in *Texaco* was the mineral lapse statute.

The Court held, "[w]e have concluded that the State may treat a mineral interest that has

not been used for 20 years and for which no statement of claims has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation." *Id.* The criteria for abandonment are set by the statute (20 years without use and failure to file a statement of claims); and the fact that the former owner retains no interest for which he may claim compensation arises from the statute's automatic reversion provision. Because the Court found the statute to be constitutional and the former owner's property interest automatically lapsed, pursuant to the statute, there was no property (or interest) that could be subject to a taking, which led the Court to conclude that "there is no 'taking' that requires compensation." *Id.* at 530.

Here, the plain language of the Act does not implicate the holding in *Texaco.* The Act, by its plain terms, does not extinguish an ownership interest in presumed abandoned or unclaimed property. Sections 17-301 through 17-307.1 address when different types of personal property are "presumed abandoned." Sections 17-312 and 17-313 govern the delivery of abandoned property to the Comptroller, and the Comptroller's custody and safekeeping of the same. Section 17-318 allows for "any person who claims a legal interest in any property delivered" under the Act to file a claim to the property or proceeds from its sale.

The statute at issue in *Texaco* automatically extinguished a mineral ownership interest after a specified period of unuse. Importantly, here, the Act does not by any construct or operation terminate or extinguish an ownership interest in property that is "presumed abandoned" or otherwise in the custody of the Comptroller. To the contrary, the Act would appear to allow that individual's legal interest in personal property in the State's custody may persist undisturbed indefinitely.

The statutory scheme challenged in *Texaco* is materially distinguishable from the Act. The court will deny the Motion on this basis and the court's standing analysis and ruling as to the

federal constitutional claim remains undisturbed.

### 2.    *Persuasive Authority*

Defendant offers several cases from other jurisdictions to persuade the court that Plaintiffs lack standing.[4]   None avails to Defendant's interest.

In *Maron   v. Patronis,* the plaintiffs learned they owned unclaimed property held in the state's custody.  Case No. 4:22-cv-00255-RH-MAF (N.D. Fla. Sept. 5, 2023).  They brought suit because, pursuant to the state unclaimed property statute, they would only be paid a principal amount without interest or other compensation.  The District Court for the Northern District of Florida held that it is constitutionally sufficient for Florida to return the plaintiffs' unclaimed property without interest or other compensation.  In so holding, the court relied on *Texaco:* "The theory is that property that is unclaimed for a sufficient period is effectively abandoned — and that a state may assume ownership of abandoned property without effecting a constitutional taking for which it must pay just compensation."  *Maron* Order of Dismissal at p. 10.   Despite the court's acknowledgement that property is abandoned after a "sufficient period," pursuant to *Texaco*, the court noted that the Florida Statute gave an owner an unlimited amount of time to assert rights to the property.  *Id.*

The *Maron* court further reasoned that:

> If, as is settled, it would have been constitutional for the State to take the property entirely, without redress, it is difficult to discern why it should be unconstitutional for the State to give back to the owner the principal only, without interest or other compensation.

*Id.*

*Maron* is unpersuasive.  First, the court disagrees with the *Maron* court's application of

---

[4] *Maron v. Patronis,* Case No. 4:22-cv-00255-RH-MAF (N.D. Fla. Sept. 5, 2023); *Garza v. Woods*, Case No. 2:22-cv-01310-PHX-JJT, 2023 WL 5608414 (D. Ariz. Aug. 30, 2023); *Light v. Davis*, 1:22-cv-00611-CJB, 2023 WL 6295387 (D. Del. Sept. 27, 2023); and *James v. Hegar*, 86 F.4th 1076 (5th Cir. 2023).

*Texaco* for the reasons articulated above.  Second, the Supreme Court has expressly rejected the *Maron* court's logic that there was no taking because Florida could have gotten to the same economic end by other (constitutional) means.  *See Horne v. Dep't of Agric.,* 576 U.S. 351, 362 (2015) explaining:

> The Government thinks it "strange" and the dissent "baffling" that the Hornes object to the reserve requirement, when they nonetheless concede that "the government may prohibit the sale of raisins without effecting a per se taking." Brief for Respondent 35; *post,* at 388, 192 L. Ed. 2d, at 415 (Sotomayor, J., dissenting). But that distinction flows naturally from the settled difference in our takings jurisprudence between appropriation and regulation.  A physical taking of raisins and a regulatory limit on production may have the same economic impact on a grower. The Constitution, however, is concerned with means as well as ends. The Government has broad powers, but the means it uses to achieve its ends must be "consist[ent]   with   the   letter   and   spirit   of   the constitution." *McCulloch* v. *Maryland*,   17   U.S.   316   (1819). As Justice Holmes noted, "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way." [*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 (1922).]

In *Garza v. Woods*, the plaintiffs challenged the constitutionality of Arizona's unclaimed property statute.  *Garza v. Woods*, Case No. 2:22-cv-01310-PHX-JJT, 2023 WL 5608414 (D. Ariz. Aug. 30, 2023).   Specifically, the *Garza* plaintiffs claimed that the Arizona unclaimed property statute was facially unconstitutional, and the defendants' enforcement of the statue violated their rights under the Takings Clause.  Here, Defendant relies on *Garza* because the District of Arizona dismissed the plaintiffs' claims under the Takings Clause based on the holding in *Texaco*. Defendant, however, overlooks a material distinction between the Maryland and Arizona unclaimed property statutes.  The Arizona statute provides: ". . . a person may file a claim. . . within thirty-five years after the final day of the fiscal year in which the department received the unclaimed property."  A.R.S. § 44-317(E).  Under the Arizona statute, an individual's interest in

unclaimed property in the State's custody automatically lapses after thirty-five years; at that moment, the property is considered abandoned as contemplated by *Texaco*. The *Garza* court concluded that "[t]he State's ultimate termination of a claimant's rights to compensation for abandoned property — presumptively after a period of 35 years under AUPA — does not constitute a taking in violation of the Fifth Amendment. *Garza*, at *12.

*Relying* on *Texaco's* holding that 20 years was a sufficient period of time to support abandonment, the District of Arizona concluded that the 35 years was adequate to support abandonment. Based on these principles, the District of Arizona concluded that enforcement of the statute did not violate the Takings Clause because it was not constitutionally unreasonable for property to be considered abandoned and ownership interest extinguished after 35 five years.

In contrast, the Maryland Act does not set forth a time period for a person with legal interest to make a claim. Further, unlike the plaintiffs in *Garza*, Plaintiffs do not allege that the State's manner or method of enforcing the statute is unconstitutional; rather, Plaintiffs allege that the Act is unconstitutional on its face because it usurps private property for the benefit of the public without just compensation by offering no means of avenue through which the true owner can seek or be paid interest or other just compensation. *Garza* does not persuade this court to disturb its ruling as to standing.

In *James v. Hegar*, the plaintiffs were Texas residents whose assets escheated to the State pursuant to Texas' unclaimed property statute. 86 F.4th 1076 (5th Cir. 2023). In *James,* the plaintiffs' claims were largely based on allegations that they did not receive proper notice before their property escheated to the state. The Fifth Circuit held that a past harm (*i.e.* failure to give proper notice before the property escheated) was insufficient to confer standing. The Fifth Circuit further held that because the plaintiffs alleged a past harm, they lacked standing to seek prospective

relief, which would bring the claims within the scope of *Ex parte Young.* As discussed herein, and in the court's memorandum opinion addressing Defendant's motion to dismiss, Plaintiffs' claims hinge upon the Act's mandate that unclaimed property be used for public benefit without just compensation to the owner. As long as an owner's property is being used by the State for public benefit and the owner has not been justly compensated, the harm is ongoing; Plaintiffs' requested prospective injunctive and declaratory relief, if granted, would redress the same. *James* does not persuade this court to disturb its ruling as to Plaintiffs' standing.

> **C.   Ripeness**

Defendant asserts that the court should reconsider its ruling that Plaintiffs' federal constitutional claim is ripe. In support, Defendant implores this court to adopt the reasoning of the District of Delaware in *Light v. Davis,* and dismiss Plaintiffs' claim as unripe. In *Light,* the plaintiff alleged challenged the Delaware unclaimed property statute based on the state's custody and use of property alleged to belong to the plaintiff. *Light v. Davis*, 1:22-cv-00611-CJB, 2023 WL 6295387 (D. Del. Sept. 27, 2023). The plaintiff did not submit a claim for the unclaimed property or provide evidence to the State Escheator that would enable the escheator to confirm that the plaintiff was the rightful owner. The District of Delaware dismissed the claims for lack of ripeness. In so holding, the *Light* court reasoned that because the plaintiff failed to file a claim for the property, too many contingencies were left open (including whether the plaintiff could prove he was a viable claimant to begin with); therefore, the court found the claim was not ripe. *Id.* at *13.

Here, Plaintiff counters that *Light* is at odds with *Knick v. Twp. of Scott,* in which the Supreme Court held that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." 139 S. Ct. 2162,

2170. This court discussed at length in its memorandum addressing the motion to dismiss the holding in *Knick* and noted that the *Knick* Court overruled its holding in *Williamson Cty. Reg'l. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  (ECF No. 12 at 15-15); *see Knick,* 139 S. Ct. at 2167 (announcing "[w]e now conclude that the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence, and must be overruled.  A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it").

Defendant asserts *Knick* did not overrule the finality requirement set forth in *Williamson Cty.*  Specifically, Defendant argues that Plaintiffs cannot satisfy the finality prong because the "contingencies" articulated by the District of Delaware in *Light* are present in this case.  (ECF No. 28 at 12.)  Plaintiffs counter that Defendant "seeks to impose a 'finality' requirement" beyond that required by the Supreme Court.  (ECF No. 27.)

In *Pakdel v. City & Cty of San Francisco*, the Supreme Court explained:

> "The finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular land in question.'"

141 S. Ct. 2226, 2230 (2021) (quoting *Suitum*, 520 U. S. 725, 739 (1997) (citations omitted).

The Supreme Court further explained the scope of the finality requirement in the context of a regulatory taking:

> The rationales for the finality requirement underscore that nothing more than *de facto* finality is necessary. This requirement ensures that a plaintiff has actually "been injured by the Government's action" and is not prematurely suing over a hypothetical harm. *Horne*, 569 U. S., at 525. Along the same lines, because a plaintiff who asserts a regulatory taking must prove that the government "regulation has gone 'too far,' " the court must first "kno[w ] how far the regulation goes." *MacDonald, Sommer & Frates* v. *Yolo County*, 477 U. S. 340, 348 (1986).  Once the government is committed to a position, however, these potential

ambiguities evaporate and the dispute is ripe for judicial resolution.

*Id.*

Moreover, the Court rejected the Ninth Circuit's view of finality, explaining:

> The Ninth Circuit's contrary approach—that a conclusive decision is not "final" unless the plaintiff *also* complied with administrative processes in obtaining that decision—is inconsistent with the ordinary operation of civil-rights suits. Petitioners brought their takings claim under §1983, which "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.' " *Knick*, 588 U. S., at ___, 139 S. Ct. 2162, 204 L. Ed. 2d 558, at 567. That guarantee includes "the settled rule" that "exhaustion of state remedies is *not* a prerequisite to an action under . . . §1983." *Ibid.* (internal quotation marks omitted). In fact, one of the reasons *Knick* gave for rejecting *Williamson County*'s state-compensation requirement is that this rule had "effectively established an exhaustion requirement for §1983 takings claims." *Knick*, 588 U. S., at ___, 139 S. Ct. 2162, 204 L. Ed. 2d 558, at 573.

*Id.*

The contingencies identified by Defendant and the *Light* court speak to a plaintiff's compliance with the administrative procedures set forth in the unclaimed property statutes at issue. Whether a plaintiff has sufficient evidence or basis to assert a claim and whether a claim will be granted by the applicable authority contemplate exhausting a certain process for a claim to be ripe. According to *Pakdel*, such exhaustion surpasses the modest finality threshold.

Here, Plaintiffs satisfy the modest finality requirement. Plaintiffs' position is that just compensation for a taking includes interest and other fruits of the property – but the statute only allows for payment of the principal amount, which is to say that the Act communicates plainly that only the principal amount is to be paid, because no means exist by which a property owner can request, demonstrate entitlement to, or otherwise demand payment of, interest or other value in connection with the state's use of private property for public benefit. The Motion will be denied

on this basis.

## IV.   <u>**CONCLUSION**</u>

For the reasons set forth herein, by separate order, the Motion for Reconsideration will be granted in part and denied in part.  The Motion is granted as to Count II of the Complaint and Count II will be dismissed.  The remainder of the Motion is denied.  The case will proceed as to Count I of the Complaint.

_____/s/_____
Julie R. Rubin
United States District Judge

January 26, 2024