**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

June 22, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:    *Steven Albert v. Brooke Lierman*
       Civil No. 1:22-cv-01558-JRR

Dear Counsel:

Plaintiff, Steven Albert ("Plaintiff"), individually and on behalf of all others similarly situated,[1] brought this case against Defendant, Brooke Lierman, Comptroller of the State of Maryland (the "Comptroller" or "Defendant") alleging that Md. Code, Com. Law §§ 17-101 et seq. (the "Act") concerning abandoned and unclaimed property violates the Fifth and Fourteenth Amendments to the United States Constitution, Md. Code Ann., Com. Law §§ 17-101 *et seq*. (the "Act"), and Article III, Section 40 of the Maryland Constitution. (ECF No. 80). Currently before the Court is a dispute concerning multiple discovery responses.

The issues have been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the requests are GRANTED in part and DENIED in part.

I.    **Background**

The instant litigation ultimately challenges the Act as unconstitutional. (ECF No. 80). Plaintiff asserts that the Act "provides that private property is 'presumed abandoned' if the owner or apparent owner has not communicated in writing with the holder concerning the property or has not otherwise given an indication of interest in the property for a certain period of time." *Id.* (quoting Md. Code Ann., Com. Law §§ 17-301–17-308). Once presumed abandoned under the Act, "the holder is required to attempt to notify the owner and, if the property is not claimed by the owner, to deliver the property into the custody of the office of the Comptroller." *Id.* at 6-7. "Upon delivery to the Comptroller, '"the State shall assume custody and shall be responsible for its safekeeping'" *Id.* at 7 (quoting § 17-313). Plaintiff alleges "[t]he Comptroller neither compensates an owner of unclaimed property for lost interest, dividends, or other earnings or accruals on the property after deposit with the Defendant but prior to sale, or the loss of the beneficial use of property, while it is in State custody, nor pays just compensation to any owner for the state's use of the private unclaimed property while in state custody." *Id.* at 9.

In *Kolton v. Frerichs*, the Seventh Circuit considered a Fifth Amendment challenge to an Illinois statute Plaintiff argues is analogous to the Act in this case. *Id.* at 10 (citing *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017). There, the Seventh Circuit reasoned, "[t]he Supreme Court has held that the Takings Clause protects the time value of money just as much as it does money

---

[1] Defendant filed a pending Motion to Strike the Class Allegations (ECF No. 81) on April 1, 2026.

itself…We held that a state may not take custody of property and retain income that the property earns. A state may charge a bookkeeping fee, which for small accounts may exceed the property's time value, but must allow the owner the benefit of the property's earnings, however large or small they turn out to be." *Kolton*, 869 F.3d at 533.  Drawing for the *Kolton* court's reasoning, Plaintiff alleges that the "essential features of the Illinois unclaimed property act are identical to Maryland's."  (ECF No. 80 at 9).

Plaintiff asserts that Defendant holds his property in custody pursuant to the Act.  *Id.* at 11. He alleges he is an "owner" and therefore "the State has converted any of Plaintiff's non-cash unclaimed property into cash and has used Plaintiff's property for public purposes, including by investing Plaintiff's property and earning interest or other accruals, and otherwise using it to fund the State's operations and programs." *Id.*  Plaintiff seeks just compensation as well as declaratory and prospective injunctive relief on behalf of a class.  (ECF No. 80 at 12).

On May 21, 2026, the parties first alerted the Court to the existence of their disputes by way of a Joint request for a Conference.  (ECF No. 92).  Judge Rubin referred the matter to the undersigned for discovery and related scheduling on May 22, 2026.  (ECF No. 93).  Thereafter, the undersigned directed the parties to file their position statements.  (ECF No. 95).  Presently before the Court are the parties' respective position statements.  (ECF Nos. 96 and 97).    The Court addresses each of the disputes below.

## II.    Analysis

Defendant seeks an order compelling Plaintiff (1) to supplement responses to Interrogatory No. 17 and Request for Production No. 15; (2) to provide an unredacted copy of his retention letter with counsel; and (3) to provide documentation related to the properties where the parties have identified Plaintiff as a potential "Apparent Owner."  (ECF No. 96).  Plaintiff seeks an order compelling Defendant to (1) supplement responses to Requests for Admission Nos. 6, 10, 11, and 12; and (2) produce documents under Request for Production No. 24. (ECF No. 97).

### A.    *Defendant's Interrogatory No. 17 and Request for Production No. 15*

Interrogatory No. 17 and Request for Production No. 15 concern Plaintiff's investments and other assets.  (ECF No. 96).  Plaintiff objects on the basis that the information is irrelevant. Interrogatory No. 17 asks Plaintiff to:

> [s]et forth a schedule of all assets and investments you owned on the date you filed this Complaint, and to the extent that it is different, assets and investments that you owned on February 20, 2026.[2] The schedule shall include a list of all assets and investments, identify who had or has physical possession of each asset and investment, the date you acquired ownership over each asset and investment, the purchase price of each asset and investment, any interest or gain or profit or other compensation earned from each asset and investment, and the value of each asset

---

[2] Defendant served her second set of written discovery requests on February 20, 2026. (ECF No. 92 at 2).

and investment as of the date of the Complaint and, to the extent it was different, on February 20, 2026.

(ECF No. 92-2 at 7).  Request for Production No. 15 asks for

[a]ll documents relating to the schedule of assets and investments you provided in response to Interrogatory Number 17, including the assets and investments you owned on the date you filed this Complaint, and to the extent that it is different, the assets and investments that you owned on February 20, 2026, including documentation showing the type of each asset and investment (i.e. savings account), the person or entity involved with of each asset and investment (i.e., PNC Bank), who had or has possession of each asset and investment, the date you acquired ownership over each asset and investment, the purchase price of each asset and investment, any interest or gain or profit or other compensation earned from each asset and investment and the value of each asset and investment as of the date of the Complaint and, to the extent it was different, on February 20, 2026.

(ECF N. 92-2 at 17).  Defendant argues that the information is relevant because Plaintiff's expert witness uses the "prudent investor rule" as the basis of his opinion to measure just compensation. Specifically, Defendant argues

Plaintiff's expert states that to comport with the [prudent investor rule] investors are concerned with the preservation of capital, yet Plaintiff's counsel stated up to 30% of Mr. Albert's investments are speculative. Defendant has the right to determine if Plaintiff would be considered a reasonably prudent investor. Although Plaintiff pleads a class action, he is the only named plaintiff.

(ECF No. 96 at 1). The parties indicate that counsel for both sides have made unavailing efforts to reach a stipulation that might resolve this first dispute. (ECF Nos. 96, 97).  Plaintiff asserts that his expert "defines the prudent investor rule as 'a rate a reasonably prudent person would have invested the funds to produce a reasonable return while maintaining safety of principal.'" (ECF No. 71 at 1). Accordingly, Plaintiff argues that the expert's objective, hypothetical analysis that measures just compensation does not connect to Plaintiff's actual assets, investments, or other investment practices. *Id.*  Defendant asserts that her expert has "noted that owners of unclaimed property cannot be treated uniformly and each claim to entitlement must be analyzed individually." (ECF No. 96 at 1).

Federal Rule of Civil Procedure 26(b)(1) provides that:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Under Federal Rule of Civil Procedure 26(b), relevance, rather than admissibility, governs whether information is discoverable. *Id*.  The Court observes that to some extent, Plaintiff's actual investments have some relevance in the case insofar as the Defense expert argues that just compensation must be evaluated individually.  To that end, the Court finds that some actual asset information is relevant. At the same time, the Court is reluctant to compel Plaintiff to provide the extensive information these requests demand, and the Court agrees with Plaintiff that the requests impose a significant burden on Plaintiff.

> For the purpose of resolving the discovery dispute, Plaintiff offered to stipulate:

> That Steve Albert's assets (held individually and/or jointly with his wife) other than real estate are invested 40% in cash, bonds and money market funds; 14% in a private partnership; 14% in a promissory note; and 32% in stocks, mostly stock funds; that these percentages are within a range (possibly a wide range) that has varied over the years and that varies from day to day, and the above percentages are only approximations made from April and/or May 2026 data.

Defendant proposed the following amended stipulation:

> Steve Albert's assets (held individually and/or jointly with his wife) other than real estate are invested 40% in cash, bonds and money market funds; 14% in a private partnership; 14% in a promissory note; and 32% in stocks, mostly stock funds; that these percentages are within a range (possibly a wide range) that has varied over the years and that varies from day to day, and the above percentages are only approximations made from April and/or May 2026 data. At least thirty percent of Mr. Albert's assets and investments are speculative. Mr. Albert is not a prudent investor as defined by Dr. Mann.

The Court finds appropriate the portions of the stipulation to which the parties agree, that being each statement before Defendant proposed adding "At least thirty precent of Mr. Albert's assists and investments are speculative." And "Mr. Albert is not a prudent investor as defined by Dr. Mann."  What Mr. Albert's assets mean, as stipulated will provide Defendant's expert with the ability to support an opinion about what portion of Plaintiff's portfolio, if any, is speculative, and similarly allow Defense counsel to explore Dr. Mann's opinion. Therefore, in lieu of responding to Interrogatory No. 17 and Request for Production No. 15, Plaintiff shall stipulate that:

Steve Albert's assets (held individually and/or jointly with his wife) other than real estate are invested 40% in cash, bonds and money market funds; 14% in a private partnership; 14% in a promissory note; and 32% in stocks, mostly stock funds; that these percentages are within a range (possibly a wide range) that has varied over the years and that varies from day to day, and the above percentages are only approximations made from April and/or May 2026 data.

Therefore, Defendant's requested relief is DENIED.

B.       *The Unredacted Copy of Plaintiff's Retention Letter with Counsel*

The parties next dispute whether Plaintiff must provide an unredacted version of Plaintiff's retainer letter with Counsel. Defendant argues she is entitled to understand the "full extent of the agreement between Plaintiff and his counsel." (ECF No. 96 at 2). Plaintiff argues the redacted information relates to case strategy and is therefore a privileged communication. Defendant requests that the Court review the letter *in camera* to determine whether the information Plaintiff states is privileged is actually protected by attorney client privilege. *Id.*

The Court does not find it necessary based on the arguments presented to review the letter *in camera*. "In general, fee arrangements do not constitute or contain confidential communications." *MuniCap, Inc. v. Wilson*, Civil No. 1:24-cv-01274-SAG, 2025 WL 3003968, at *4 (D. Md. Oct. 24, 2025) (citing *In re Grand Jury Matter*, 926 F.2d 348, 352 (4th Cir. 1992)). Therefore, to the extent that the letter may contain redacted information showing an arrangement for compensation that may be owed to Plaintiff as a class representative, such fee information must be produced. *Id.* Seeing no other stated reason for the Defendant's request, the Court will otherwise DENY the request for an order compelling Plaintiff to provide an unredacted copy. Plaintiff shall supplement his response by removing any redactions to fee-arrangement information such as any compensation for being a class representative, if any, within twenty (20) days of the entry of this Opinion and Order.

C.       *Plaintiff's Property Information*

Defendant's Requests for Production Nos. 1, 2, 5, and 8 all concern documents related to any properties Plaintiff believes the Comptroller holds or did hold as an apparent owner, such as proof of ownership, the value of the property, whether the property earned interest while in possession of the Holder, and communications between Plaintiff and the Holder. Plaintiff concedes that some documents may exist in an out-of-state storage unit, but he believes traveling out of state to search it is not proportional to the needs of the case. The Court understands that out-of-state travel can be inconvenient; yet, Plaintiff initiated the present litigation and has put allegations that the state has improperly withheld compensation for ownership of his property directly at issue. Plaintiff also does not articulate precisely what the burden would be or even the state in which the storage unit is located. Although Plaintiff is confining his claim *as to ownership* of that listed in state records, the otherwise undescribed potential additional documents may provide evidence of value, etc. or, alternatively, may also be contradictory of the publicly-available information such that the Court concludes the search is justified. Thus, the Court finds the evidence relevant in this case and is unable to reach a conclusion that any burden would outweigh the benefit.

Therefore, Defendant's request is GRANTED, and Plaintiff shall, within the discovery period, search the documents contained in his storage unit and supplement his discovery responses accordingly.

### D.    *Plaintiff's Request for Admission Nos. 6, 10, 11, and 12*

The parties next dispute whether Defendant must respond to the Plaintiff's following Requests for Admission:

**REQUEST NO. 6**: The State uses Unclaimed Property for public purposes and cannot pay any compensation for its use.

**REQUEST NO. 10**: Unclaimed Property held in the State's Special Fund earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments.

**REQUEST NO. 11**: Unclaimed Property held in the State's General Fund earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments.

**REQUEST NO. 12**: Unclaimed Property held in the State's State Projects earns interest, dividends, or other accruals and/or is held in interest-bearing accounts or other investment instruments.

(ECF No. 92-6 at 46-48). Defendant objects to Request No. 6 on the grounds that it cannot do so without offering a legal conclusion or otherwise providing an explanation of the legal theories in the case.  On this first issue, Defendant is correct that Rule 36 allows the parties to "request from their adversaries admissions regarding purely factual matters or the application of law to facts, but not matters of law."  *Adventis, Inc. v. Consolidated Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005). Here, the Court finds that Request for Admission No. 6, as phrased, asks Defendants to answer on a matter of law.  In the Court's view, a question that asks whether a party "can" pay is distinct from a question asking whether a party "has" paid or "does" pay on these kinds of property issues. By asking the Defense to admit that it "cannot pay any compensation," Plaintiff asks Defendant to admit the Act has a particular legal effect.  Therefore, the Court will DENY Plaintiff's request for an order compelling Defendant to admit Request No. 6.

The remaining requests concern earnings related to the unclaimed properties in various State departments.  Defendant argues she cannot provide a response because she has no knowledge of how the Maryland State Treasurer's Office holds, pays out, or invests funds. (ECF No. 96 at 3). Plaintiff argues that "[g]iven the Comptroller's role as the State's chief fiscal officer and Administrator of the Special Fund, Defendant's claimed lack of knowledge and inability to obtain knowledge as to whether these funds earn interest or other accruals is not credible."  (ECF No. 97 at 3).  Again recognizing Rule 26(g), and seeing no evidence of bad faith in Defendant's discovery and Court filings, the Court is unable to compel Defendant to answer to Plaintiff's satisfaction by way of this discovery device.  It may well be the case that Plaintiff can obtain the same answers he seeks by way of depositions of the appropriate officers or the subpoena duces tecum Defendant indicated Plaintiff served in her position letter.

Therefore, Plaintiff's request for an order compelling admission of Request Nos. 10-12 is DENIED.

E.      *Plaintiff's Request for Production No. 24*

The final dispute concerns Plaintiff's Request for Production No. 24, which asks Defendant to provide the "name(s), nature, contents, and search capabilities of the database(s) in which information relating to the Unclaimed Property is kept, including all data diaries, user guides, and manuals" (ECF No. 92-6 at 33). Defendant objects on the basis that the documents are not relevant because the "search capabilities of the Comptroller's unclaimed property database have no bearing on whether compensation is due and if so, what the measure of compensation should be." (ECF No. 96 at 3). Defendant represents she did produce the Holders' Manual, "which shows what information is remitted to the Comptroller by the Holders." *Id.* Plaintiff argues that this information is relevant to class certification and notes that the Comptroller's database systems have been changed such that there are significant conversion issues. (ECF No. 97 at 3).

Without more explanation, it is unclear how a system conversion would impact the relevance of search capabilities or whether certain records were lost or corrupted in the process. Those are matters that might be explored at deposition. The Court tends to agree with the Defendant that the specific search capability of its Unclaimed Property system has no bearing on who may be a potential class member. The Court would also agree that a manual describing how to use the system would be relevant, and Defendant already produced it. Plaintiff does not explain how the Holder's manual is insufficient. *See id.* Similarly, it is unclear to the Court how the public nature of the Unclaimed Property Website would be an insufficient method of finding class members; it would certainly be less burdensome. Plaintiff's discovery responses have made clear he did not even know the State had in its custody his property until he searched the Unclaimed Property website.

Based on the reasoning above and considering that Defendant has produced the Holders' Manual, the Court will DENY the request for an order compelling Defendant to supplement its response to Request for Production No. 24.

III.    **Conclusion**

For the foregoing reasons, the Court orders that the parties adopt Plaintiff's Stipulation under Part II.A. The Court further orders that Plaintiff shall, within twenty (20) days of the entry of this Opinion and Order provide any supplement consistent with Part II.B and before the close of the discovery period, provide any supplement consistent with Part II.C., if applicable. The discovery requests are otherwise denied.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

8